(4 Misc. Rep. 486.)

## BENSLER v. LOCKE.

(Superior Court of Buffalo, General Term. July 18, 1893.)

SALE—ACCEPTANCE—EVIDENCE.

Plaintiff's assignor delivered to defendant certain mantels, different from those ordered, acceptance of which was refused; but permission was given to put them up, that defendant might, on seeing them in place, be induced to accept. He, however, again rejected them. The assignor testified—and his son corroborated him—that he went to defendant's house to remove them; that defendant's wife refused to allow them to be removed; that he then went to defendant, who directed him to remove them; that, on again going to the house for that purpose, he was again refused delivery of them by the wife. She testified that he came to the house but once, when she was sick; that he said he came to see about the mantels, but made no demand for them; and that she directed him to see her husband, and that she never saw him again. Defendant testified that he saw assignor but once, and then in the presence of plaintiff, when he told him to take away the mantels, and fix up the walls. Defendant afterwards, on selling his house, took the mantels, and put them up in the house into which he moved. *Held*, that the court was justified in finding that no demand for their delivery was refused, and that there was no acceptance of them. White, J., dissenting.

Appeal from municipal court.

Action by Anna Bensler against William H. Locke for goods sold and delivered. Judgment for defendant. Plaintiff appeals. affirmed.

Argued before TITUS, C. J., and HATCH and WHITE, JJ.

George Wing, for appellant.
John G. Romer, for respondent.

HATCH, J.  Upon the record it stands admitted that the mantels delivered were not such as were ordered.  It is also admitted that objection was immediately taken to them, before they were placed in position.  At the solicitation of the vendors, they were permitted by defendant's wife—defendant not being present—to place them in the house, for the sole purpose of enabling defendant to see them in position, in the hope that he might be induced to accept them.  When defendant saw the mantels thus placed, he immediately rejected them, and notified the vendors to take them away, and restore the walls.  This was not done, and thereafter the vendors presented their bill, which included the mantels.  Defendant repudiated the bill to that extent, and paid the balance, which was accepted.  Thereafter, negotiations were had to purchase the mantels at a less price.  These proved abortive.  The vendors now made a general assignment for the benefit of creditors, and their assignee attempted to sell the mantels to defendant, but failure attended his efforts.  Now arose the only contested question in the case.  When the assignee went to defendant to see about the bill, no agreement was reached, and the assignee said he would take the mantels away.  Defendant told him to do so, and fix up the walls. Plaintiff's proof tended to establish that thereafter Bensler, as agent of the assignee, went to defendant's house, and demanded the mantels of defendant's wife, whom he found in charge; that she refused to allow them to be removed.  Thereupon Bensler went to defendant, and was by him again directed to get the mantels, and, visiting the house again for that purpose, was again refused delivery of them by the wife.  At a prior time he had visited the house for the purpose of removing the mantels, and found it locked. This testimony was corroborated by Bensler's son, who accompanied him, and constituted plaintiff's evidence upon this branch of the case.  Defendant's wife testified that Bensler never visited the house but once, to her knowledge, and then said he came to see about the mantels, but made no demand for them; that at the time she was sick, and directed him to see her husband; and that she never saw him thereafter.  Defendant testified that he did not see Bensler but once, and that was in the presence of the assignee, when he told him to take the mantels away, and fix up the walls.

Upon this testimony the court below was authorized to find that there was never an acceptance of the mantels, and that no demand for their delivery had ever been made and refused.  The witnesses were all interested, as Bensler was one of the firm of vendors of the property, interested in the assigned estate, and husband of the plaintiff.  The court had the benefit of their presence, and observed their manner, and we see nothing which calls upon us to disturb its conclusion thereon.  This finding left the mantels the property of the assignee of vendors, and no action could be maintained for their purchase price, or for conversion by him; and plaintiff, as assignee of this account, occupies no better position.  This result

is supported in Brown v. Foster, 108 N. Y. 390, 15 N. E. Rep. 608. Defendant occupied no other or different position with reference to this property than that of a gratuitous bailee. When it was not taken away upon notice, in the proper discharge of his duties he was authorized to properly protect it, by storing or otherwise. Dale v. Brinckerhoff, 7 Daly, 45. It was proper care to remove it from the house when defendant moved, and keep it safely. The use to which he put it might have evidenced an acceptance of it, and consequent liability. It was also entirely consistent with proper care of it, for delivery to the owner, and the court below has adopted the latter view. The present plaintiff, as assignee, is entitled to the delivery of the mantels to her, upon demand, but, upon the facts found, she is not entitled to maintain this action. The judgment appealed from is affirmed, with costs.

TITUS, C. J., concurs.

WHITE, J., (dissenting.) This is an appeal by the plaintiff from a judgment of the municipal court of Buffalo, of no cause of action, rendered on March 8, 1892, in favor of the defendant, and against the plaintiff. The plaintiff claims that in May, 1890, the plaintiff's husband and one Hughson, as copartners, sold and delivered to the defendant a quantity of furniture, including two mantel tops, at the agreed price of $239, payable upon the delivery of the goods, and that the goods were worth the sum agreed upon. The complaint admits that $199 thereof was paid, and seeks to recover the alleged balance of $40, with interest from May 9, 1890. The complaint also alleges that the claim sought to be enforced was assigned by the plaintiff's husband and his partner to one John Streicher, and that Streicher reassigned it to the plaintiff, before suit was brought. The answer denies the value of the property purchased by the defendant from the plaintiff's husband and his partner, and their alleged assignments of the claim, and alleges payment in full for all he purchased. The substantial issue in the case is whether or not the two mantel tops were purchased by the defendant, or whether he became liable to the firm of Bensler & Hughson for their value. If this issue is to be decided in favor of the plaintiff, the judgment appealed from must be reversed. The transaction between the defendant and the firm of Bensler & Hughson was, in the first instance, conducted by Hughson, on the part of the firm, with the defendant, personally. Hughson testifies that he made the sale, and that the mantel tops were charged by him to the defendant at $40, and that the defendant's wife assisted him in selecting the articles, and that the mantel tops were to be made from a plate exhibited by him to them at the time of the selection. He says he delivered the articles, including the mantel tops, at the defendant's house, to his wife, who expressed her disapproval of them. In fact, they were not according to contract. But she consented that they be

put in place, on the suggestion of Hughson that she might then be satisfied with them, and she told him she would not pay for them until they were made right. Afterwards, Hughson went to the defendant, at his office, with the bill for the goods, including the mantel tops; and the defendant told him to take the mantel tops away, but made an offer for them, which Hughson declined. Another bill was made out, omitting the mantels, and defendant then gave his note for the balance of the goods, $199, which was duly paid. The plaintiff's husband says, after the assignment to Streicher, he asked defendant to pay for the mantels; that defendant offered $10 for them, which was refused, and that defendant told him to take them away from the house; that he went for them, and informed Mrs. Locke of the arrangement made with her husband to take them away, but she refused to let him take them. This was reported to defendant, who again told Bensler to take them away. On again applying to Mrs. Locke, at the house, for them, she again refused to allow him to take them. He says, further, that defendant never refused, by word of mouth, to give up the mantel tops, but told him each time to go and get them, and his wife refused to deliver them up. Charles Bensler corroborates the statements of his father as to the refusal of Mrs. Locke to allow the mantel tops to be taken out of the house. The defendant's wife virtually admits that Bensler came and demanded the mantel tops, and that she refused to allow him to take them. The inference that she did refuse is irresistible. Defendant removed the mantel tops from the house in which Hughson placed them to another house, afterwards purchased by him, and put them up himself, and has since used them in the last-mentioned manner. The plaintiff contends that these mantel tops were ordered by the defendant, and in this we think she is clearly in error. It is undisputed that the mantel tops delivered and put up by Hughson were not the ones contracted for at the sum of $40. Hughson himself so testifies. It is further undisputed that the defendant never agreed, in terms, to pay $40 for the mantel tops delivered. No one, in fact, claims that he did. But he knew from the start that these mantel tops were furnished instead and in place of those ordered, and that the price charged for them was the same, and that if he accepted them he was expected to pay that price. The record shows that Mrs. Locke took part in selecting the goods purchased by her husband. On the trial below the defendant was permitted, over the objection of the plaintiff, to prove the statements of Mrs. Locke to Hughson concerning the defects in the mantel tops, or the respects in which they varied from those ordered, and the arrangement with her under which they were put up in the first place. No exception was taken to the admission of this evidence, but its admission at the instance of the defendant shows that he relied and tried his case upon the theory that his wife acted as his agent in their dealings with Bensler and Hughson, and, having had the benefit of that

theory on the trial, he should not be permitted to repudiate it now. The only theory upon which the wife's evidence was admissible to show a rejection of the mantel tops was that of agency for her husband. If she were not his agent, her testimony would have been incompetent in reference to that transaction. Independently, however, of the position taken by the defendant, in this respect, upon the trial, the conduct of the defendant and his wife, for which he should be held responsible, fixes his liability for these mantel tops at the price charged. While it is true that the marital relation alone raises no presumption of authority on the part of the wife, yet slight evidence of actual authority in domestic matters is enough. The fact that she joined her husband in the selection of the goods, and in fact was the only person in a situation to receive them when delivered, and that they were found by him to have been put up in shape for use, and thereafter actually appropriated by him, together with her refusal, on two occasions, to allow them to be taken away, when informed that her husband had said they might be, and the failure of the husband to take any steps towards their return after these demands upon his wife, all tend, in my mind, to the conclusion that the defendant deliberately determined to keep and use the mantel tops as his own, notwithstanding their variance from those contracted for. The defendant should either have made it possible for Bensler to get the mantel tops,—at any rate, on his second demand,—or be held to have accepted, and compelled to pay for, them. When the defendant left his house in charge of his wife, he thereby constituted her his agent to receive the mantel tops; and, by the same principle, she, as his agent, was bound to deliver them up on demand of Hughson. No sufficient reason is given for her refusal to do that, and therefore it constituted a legal acceptance of them by the defendant. While the amount involved in this litigation is comparatively small, the principle to be vindicated, as I look at the case, lies at the foundation of honesty and fair dealing among men.

I think the judgment appealed from should be reversed.